COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ERNESTO RODRIGUEZ,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00222-CR



Appeal from the


409th Judicial District Court


of El Paso County, Texas 


(TC# 20040D05773) 



O P I N I O N


 Ernesto Rodriguez appeals his conviction for injury to an elderly individual. A jury
found him guilty and assessed punishment at 5 years' imprisonment. In one issue, Appellant
challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

 In the early morning hours of October 17, 2004, El Paso Police Officer German Ponce
was dispatched to a family assault in progress at 2626 Savannah. When he arrived at the
residence he heard "a big old scuffle and some yelling towards the rear of the house." Officer
Ponce rang the doorbell and was let in by the complainant's daughter, Graciela Rodriguez. 
Graciela led the officer into a back bedroom where her brothers were fighting. Officer Ponce
observed Javier Rodriguez, Appellant's brother, sitting on top of Appellant, trying to hold
Appellant down to the ground. Appellant and Javier were still yelling at each other and
Appellant was moving around. Sixty-seven year old Maria Rodriguez, the complainant and
Appellant's mother, was kneeling beside them, trying to calm them down and to separate them. 
Officer Ponce saw Appellant trying to kick his brother in the back of the head. As he swung his
legs, his knee and shin hit Ms. Rodriguez. She was moved to the side by the force of the kicks. 
It looked to the officer as if Ms. Rodriguez was in discomfort from the kicks.

 Officer Ponce ordered Javier to get off of Appellant and Javier immediately let go of
Appellant's hands. Appellant then started swinging his arms and punching at Javier. Some of
the punches struck Javier in the face and in the chest area. Officer Ponce could not recall if some
of the strikes towards the brother actually hit Appellant's mother, but he was more than sure that
they did because she was so close to the brother in her effort to separate them. These strikes
would have hit her in the temple area of the face. When Officer Ponce saw that Appellant
intended to pull Javier down and bite him, he placed his foot on Appellant's shoulder to hold him
down. Officer Ponce pushed Javier away and told him to lay down on the floor. Ms. Rodriguez
managed to get away and took a seat on the edge of the sofa. At that point, Officer O'Quinn, the
backup officer arrived. With Officer O'Quinn's assistance, Officer Ponce was able to turn
Appellant over unto his stomach and handcuff him. Appellant was escorted out of the house and
placed into a patrol unit.

 After Appellant was taken away, Officer Ponce spoke with Ms. Rodriguez. He saw that
she was holding the right side of her face as if in discomfort and that the area she was holding
was red. This, the officer testified, was consistent with where Appellant would have struck her
when he was swinging his arms and the redness was consistent with being struck in the face. 
Ms. Rodriguez told Officer Ponce that she had been awakened by a loud commotion coming
from Javier's room. She explained that her sons were always arguing and fighting and that
Appellant could become very violent. Ms. Rodriguez tried to separate them, as she had done in
the past. This time, however, when she got in between them, Appellant pushed her down to the
floor. She told Officer Ponce that she felt pain as a result of the fall. On cross-examination,
Officer Ponce testified that he thought Appellant's kicks were being aimed or directed at his
brother. He denied pushing or shoving Ms. Rodriguez out of the way during the altercation.

 Officer O'Quinn did not witness the kicking or punching, but testified that she observed
Ms. Rodriguez was holding the right side of her face, which was red and puffy, while the rest of
her face had a normal color. Ms. Rodriguez also appeared shaken, distressed, and angry. Officer
O'Quinn spoke with Javier, who told her that Appellant came into his room and they started
arguing. When their mother stepped in to break them up, Appellant pushed their mother, which
led to the fighting. Officer O'Quinn observed that Javier's nose was bleeding profusely and it
appeared to be broken.

 Maria Rodriguez was called by the State and initially denied that there had been an
argument or any sort of struggle in her home that morning. She then agreed that police arrived at
her home because Javier and Appellant were arguing. She heard them arguing in English and
went in to Javier's room. She talked to them and was able to calm them down. When the police
arrived, she was embracing and hugging Appellant. She claimed that she was talking to him and
he was no longer upset. Ms. Rodriguez also claimed that the officer yelled at her and threw her
to the floor. Then he ordered her to leave the room and she went into the kitchen. 
Ms. Rodriguez denied seeing any physical struggle between Javier and Appellant. She denied
that Appellant ever struck, pushed, or kicked her in any way. She denied that she felt any pain
that morning or that her face had any swelling. She also denied telling any of the police officers
that Appellant had pushed her. Ms. Rodriguez stated that the only thing that happened was she
hurt her arm when the police officer threw her on the floor.

 Upon examination by defense counsel, Ms. Rodriguez admitted that Javier was
restraining Appellant on the ground and that Appellant was trying to get loose from Javier. She
denied, however, that Appellant was kicking Javier or that Appellant ever made contact with her
or struck her, intentionally or accidently. Ms. Rodriguez testified that Appellant was accused of
something that he did not do and that he never hit her near the face or the body. Further, she
stated that Appellant never intentionally struck her or caused her injury. On re-direct
examination, contrary to Officer Ponce's testimony, Ms. Rodriguez denied requesting or
accepting an ex parte protective order against Appellant.

 Graciela Rodriguez testified on behalf of the defense. Graciela stated that her brothers
Javier and Appellant were arguing loudly and the argument turned into a physical fight. Her
mother was in the room first and then she followed. She and her mother got in between the
brothers. Graciela was talking to Javier trying to calm him down and her mother was talking to
Appellant and trying to do the same, but the brothers ignored them and continued arguing. With
tempers flared, the brothers attacked each other. Quickly, the brothers ended up on the floor,
with Javier on top of Appellant, holding Appellant down. Graciela acknowledged that she was
the person that called the police because she was scared and because that kind of physical
altercation had never taken place before in her home. She showed the officer to the room, but
was not permitted to re-enter. Instead, she was taken into the living room. According to
Graciela, Appellant did not kick, strike, or bite Javier. She did not see Appellant in any way
make contact with her mother, not even accidently, nor did she hear her mother ever state that
she had been injured. Graciela did not recall her mother holding her face or cheek nor did she
remember seeing that one of her mother's cheeks was red. Afterwards, her mother told her that
one of the police officers pulled her away and threw her down, but that otherwise her mother was
not injured. Graciela denied that she or her mother ever expressed any fear of Appellant.

 On cross-examination, Graciela admitted that she did not see the entire altercation
because she left the room to call the police when the brothers started hitting each other. She
explained that she was out of the room for three or four minutes, but could hear her mother
yelling at them to stop. When she returned, her mother was trying to separate them. When the
brothers continued fighting on the floor, Ms. Rodriguez was on her knees in between, still trying
to separate them. Graciela then left the bedroom to answer the doorbell. She denied telling the
police officers that Appellant pushed her mother or that this was the reason the brothers started
physically fighting.

SUFFICIENCY OF THE EVIDENCE

 In his sole issue, Appellant challenges the sufficiency of the evidence to sustain his
conviction. Specifically, Appellant asserts the evidence was legally and factually insufficient
because the State failed to prove that Appellant pushed, hit, or kicked Ms. Rodriguez or that she
was injured.

Standards of Review

 In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). More particularly, sufficiency of the evidence should be measured by the
elements of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The trier of fact is the sole judge of the
weight and credibility of the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App.
2000). In conducting our review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556,
562 (Tex.Crim.App. 2000); Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any
inconsistencies in the evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d
394, 406 (Tex.Crim.App. 2000).

 In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). 
Evidence can be factually insufficient if the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation,
however, should not intrude upon the fact finder's role as the sole judge of the weight and
credibility given to any witness's testimony. See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). We will not set aside the judgment unless the evidence supporting the
verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. A
clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the
conscience" or "clearly demonstrates bias." Zuniga, 144 S.W.3d at 481. An opinion addressing
factual sufficiency must include a discussion of the most important and relevant evidence that
supports the appellant's complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003).

Bodily Injury to an Elderly Individual

 In this case, the State was required to prove beyond a reasonable doubt that Appellant
intentionally or knowingly caused bodily injury to Maria Rodriguez, an elderly individual, by
pushing her and causing her to fall or by striking her on or about the face with his hand, or by
kicking her on or about the head with his foot. See Tex.Pen.Code Ann. § 22.04(a)(3), (c)(2)
(Vernon Supp. 2006). Under the Penal Code "bodily injury" is defined as "physical pain, illness,
or any impairment of physical condition." See Tex.Pen.Code Ann. § 1.07(a)(8)(Vernon Supp.
2006).

 In this case, the evidence shows that when Officer Ponce entered the bedroom, Javier was
trying to restrain Appellant on the ground. The brothers were yelling at each other and Appellant
was squirming around. Ms. Rodriguez was kneeling beside them, trying to separate them. 
Appellant was swinging his legs and kicking Javier in the back of the head. Officer Ponce saw
Appellant's knee and the lower portion of his leg make contact with Ms. Rodriguez. Officer
Ponce described the contact as "pretty strong hits," such that the force moved Ms. Rodriguez to
the side. Officer Ponce stated that it looked as if she was in discomfort from the kicks. When
Officer Ponce ordered Javier to get off of Appellant, Appellant started swing his arms and
punching at Javier.

 After Appellant was subdued, handcuffed, and escorted out of the house, Officer Ponce
saw Ms. Rodriguez holding the right side of her face as if in discomfort and that area of her face
was red. Officer O'Quinn also noticed that Ms. Rodriguez was holding the side of her face and
that it appeared red and puffy. According to Officer Ponce, he was more than sure that some of
Appellant's punches hit Ms. Rodriguez because she was so close to Javier and that these strikes
would have hit her in the face. Officer Ponce also testified that the portion of the face that
Ms. Rodriguez was holding was consistent with the area where the swings were occurring and
the redness was consistent with being struck in the face. Based on Officer Ponce's testimony, the
jury could have reasonably concluded beyond a reasonable doubt that Appellant struck
Ms. Rodriguez in the face with his hand and that she suffered pain, and thus, bodily injury from
this assaultive contact. See Goodin v. State, 750 S.W.2d 857, 859 (Tex.App.--Corpus Christi
1988, pet. ref'd)(fact finder may infer victim suffered physical pain based on his or her
understanding of pain and some of its natural causes); Wawrykow v. State, 866 S.W.2d 96, 100
(Tex.App.--Beaumont 1993, no pet.)(rational fact finder could have inferred that blows from
appellant's fist to police officer's head area hurt the officer or caused her physical pain beyond a
reasonable doubt); see also Kitchens v. State, 823 S.W.2d 256, 258-59 (Tex.Crim.App. 1991),
cert. denied, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992)(when jury returns general
guilty verdict on an indictment charging alternative theories of committing the same offense, the
verdict stands if evidence supports any of the theories alleged). Appellant does not specifically
challenge the intent element of the offense, but under the law of transferred intent, of which the
jury was instructed, even if Appellant intended only to strike his brother, that intent would
transfer to Ms. Rodriguez as the ultimate victim. See Tex.Pen.Code Ann. § 6.04(b)(2)(Vernon
2003). We conclude the evidence is legally sufficient to sustain Appellant's conviction.

 After viewing all the evidence in a neutral light, we also find that it was not too weak to
support the finding of guilt beyond a reasonable doubt. While Ms. Rodriguez and her daughter
Graciela refuted the officers' testimony, and in particular, Ms. Rodriguez denied that Appellant
made any assaultive contact or that she suffered any pain from the alleged contact, the jury as fact
finder and sole judge of the weight and credibility of the witnesses' testimony could have
discredited that testimony. See Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).
Therefore, we conclude the evidence is both legally and factually sufficient to sustain Appellant's
conviction. Appellant's sole issue for review is overruled.

 We affirm the trial court's judgment.


April 26, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)